IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CARLOS G. SANCHEZ,                    )
                                      )
            Petitioner,               )
                                      )
                                      )     Case No. CIV-15-79-R
v.                                    )
                                      )
JASON BRYANT, Warden,[1]              )
                                      )
            Respondent.               )

## REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging his convictions for Aggravated

Trafficking in Illegal Drugs and Possession of a Firearm While Committing a Felony entered in

the District Court of Canadian County, Case No. CF-2012-739, following a jury trial.

Respondent has responded to the Petition and filed the relevant state court records, including the

transcript of Petitioner's jury trial (hereinafter "TR__").  The matter has been referred to the

undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

For the following reasons, it is recommended that the Petition be denied.

I. Background

On the afternoon of December 5, 2012, Petitioner was stopped by Oklahoma State Bureau

---

[1]The state officer having custody of the applicant is the properly-named respondent in a
federal habeas action. Rule 2, Rules Governing Section 2254 Cases in the United States District
Courts.  Jason Bryant is the current warden of James Crabtree Correctional Center ("JCCC") where
Petitioner is incarcerated.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Warden Bryant is substituted for former JCCC Warden Dowling as the Respondent in this action.

of Narcotics ("OBN") Officer Hess[2] while traveling east on Interstate 40 in Canadian County, Oklahoma. The officer stopped Petitioner for traveling too closely to the vehicle in front of him. Petitioner handed the officer an Arizona driver's license. Petitioner was driving a rental car, and he was the sole occupant of the vehicle. Officer Hess advised Petitioner he would be issued a warning and had Petitioner sit in the front passenger seat of the officer's patrol car.

Officer Hess testified that he received over 1200 hours of training with specific training in drug interdiction and advanced training in interrogation and body language. He testified that based on his training and experience rental vehicles are often used to smuggle illegal substances across the United States. The officer engaged Petitioner in conversation while waiting for a dispatcher to determine whether Petitioner's license was valid and whether he had outstanding warrants.

Petitioner advised Officer Hess that he was traveling to Little Rock, Arkansas. When questioned about the purpose of his trip, Petitioner gave inconsistent answers. First, he said he was going to visit a friend, and later he informed the officer that he was on a business trip. Petitioner provided the officer a rental car contract which showed the car was due to be returned to Tucson, Arizona, the previous day, on December 4, 2012.

Another officer with a drug dog arrived at the scene of the traffic stop. The officer walked the dog around the rental car, and the drug dog alerted to the driver's side rear door of the car. Officer Hess asked Petitioner if he was transporting anything illegal in the car, and

---

[2]At the time of Petitioner's trial, Mr. Hess was no longer employed by OBN. However, for the sake of clarity, he will be referred to as Officer Hess in this Report and Recommendation.

Petitioner did not respond. Petitioner also denied that there were any firearms in the vehicle. Petitioner subsequently informed the officer that there was a .9 millimeter semi-automatic gun in the car with a loaded chamber.

A search of the vehicle revealed the presence of a .9 millimeter, magazine-loaded handgun in the center console between the two front seats of the car. Officer Hess testified that a small black duffle bag lying on the front passenger seat contained toiletry items, minimal clothing, a spot-light type work light, a ratchet screwdriver set with standard-size, not metric, bits, and a Duralast nut driver with a .7 millimeter bit attached to it. Petitioner acknowledged that the duffle bag and its contents belonged to him. The officers observed a "noticeable thud" when the driver's side rear door of the vehicle was moved. TR Vol. I, at 151.

The officers used the Duralast nut driver with .7 millimeter bit to remove the driver's side rear door where the officers discovered ten cellophane-wrapped bundles. One of the packages field-tested as positive for methamphetamine. Petitioner denied knowledge of the drugs and claimed he had been set up.

When asked to describe his purported destination in Little Rock, Arkansas, Petitioner described only a house along a highway. He did not know the exact address of the purported destination, and he could describe only the first name of the individual he stated he was going to see at that residence in Arkansas. Petitioner was charged with Aggravated Trafficking in Illegal Drugs and Possession of a Firearm While Committing a Felony.

During Petitioner's trial, a videotape of the stop and a separate videotape of the search of Petitioner's vehicle were admitted into evidence. Two receipts dated December 3, 2012, and

December 4, 2012, seized from Petitioner's vehicle were admitted into evidence showing the purchase of a duffle bag and a few items of men's clothing from a Wal-Mart in Paramount, California. Evidence was also admitted concerning laboratory testing of two of the bundles discovered in Petitioner's vehicle. This testing confirmed the presence of methamphetamine. Each of the ten bundles was estimated to contain about a pound of the illegal substance.

Petitioner was convicted of the charged offenses in a jury trial conducted on October 15-17, 2013. He was sentenced in accord with the jury's recommendation to a 30-year term of imprisonment for the drug trafficking conviction and a concurrent, two-year term of imprisonment for the firearm possession conviction.

In an appeal of the convictions, Petitioner asserted nine grounds for relief. The Oklahoma Court of Criminal Appeals ("OCCA") issued a decision on December 14, 2014, in which the appellate court rejected each of Petitioner's claims and affirmed the convictions and sentences.

II. Standard of Review of Constitutional Claims

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal

law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, 563 U.S. __, 131 S.Ct. 1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

III. Stone's Preclusion Rule for Fourth Amendment Claims - Grounds One and Two

Respondent contends that Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claims in grounds one and two during his trial proceedings and on appeal and that Stone precludes consideration of the merits of these claims.

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court addressed the question of whether, in a federal habeas proceeding, state prisoners may assert a violation of the Fourth

Amendment with respect to seized evidence introduced at a trial. The Court reasoned that the "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease." Id. at 492. The purpose of this exclusionary rule is "to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it." Id. This goal would not be enhanced, the Court found, "if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant." Id. at 492-493.

Further, the Supreme Court found in Stone that any benefit from allowing habeas review of a search-and-seizure claim would be outweighed by the costs to other values promoted by the criminal justice system. Id. at 493-494. Thus, the Court concluded that where a State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," a state prisoner may not obtain habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Id. at 494.

Considering all of the circumstances present herein, the record shows that Petitioner was given an opportunity for full and fair consideration of his Fourth Amendment claims prior to trial and on appeal.

In his first ground for habeas relief, Petitioner asserts that "[t]he traffic stop was unlawful [and] thus all subsequent evidence should be dismissed as 'fruit of the poisonous tree.'" Brief in Support of Petition, at 9. Prior to his trial Petitioner moved to suppress the evidence obtained in the search of his rental car, arguing that the traffic stop was unlawful. The State filed a

response to the motion. In a hearing, both parties relied on the preliminary hearing testimony of Officer Hess. (TR Motion Hearing). Noting that the Oklahoma statute governing the traffic offense for "following too closely" allows the officer discretion and finding the officer reasonably exercised his discretion under the circumstances, the trial court ruled that the traffic stop was valid and overruled the motion.

Based largely on the doctrine established in <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963)(evidence seized in violation of Fourth Amendment must be excluded as "fruit of the poisonous tree"), Petitioner argued in his direct appeal that the traffic stop was unlawful. Petitioner admitted that Oklahoma law makes it unlawful to follow too closely to another vehicle, <u>see</u> Okla. Stat. tit. 47, § 11-310(a), but argued that the evidence at trial did not show Petitioner's driving was dangerous. Hence, there was no probable cause to support the traffic stop which led to the seizure of the illegal substances from Petitioner's rented vehicle, and that the seized evidence should have been excluded as "fruit of the poisonous tree." Response, Ex. 1.

The OCCA found that the district court did not err in denying Petitioner's motion to suppress evidence. Response, Ex. 3. The OCCA observed that the "district court reviewed the arresting officer's preliminary hearing testimony and correctly found that the officer's conclusion that Sanchez was following too closely was supported by competent evidence." <u>Id.</u> at 2.

In his second ground for habeas relief, Petitioner asserts that the search of his rental vehicle was unlawful because the traffic stop was prolonged beyond the time reasonably required

to complete the stop and the officer extended the traffic stop so the drug dog could be used. Petitioner presented this same argument in his direct appeal. Citing Illinois v. Caballes, 543 U.S. 405, 407 (2005), Petitioner argued that the traffic stop and resulting search were unlawful because the drug dog was not deployed until after a dispatcher had informed the arresting officer that Petitioner's driver license was "clear." Response, Ex. 1, at 8-9.

The OCCA rejected this Fourth Amendment claim, finding that "[t]he traffic stop was videotaped and the videotape belies Sanchez's claims. (State's Exhibit 1). The videotape shows the scope and duration of the seizure was related to the stop and lasted no longer than necessary to effectuate the stop's purpose." Response, Ex. 3, at 2-3.

In Petitioner's Reply brief, Petitioner argues that he did not receive a full and fair opportunity to litigate these claims. However, Petitioner does not allege how his opportunity to litigate his Fourth Amendment claims was restricted or foreclosed. The record reflects Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claims in grounds one and two in the state courts, and federal habeas review of those claims is precluded by the doctrine established in Stone.

IV. Admission of Evidence - Ground Three

In his third ground for relief, Petitioner asserts that the state court erred in admitting prejudicial evidence during his trial (1) concerning the use of Interstate 40 as a drug trafficking route,[3] (2) concerning the implication of certain body language during a traffic

---

[3]Officer Hess testified that Interstate 40 is a major highway crossing the United States that it is often used "by people engaged in drug trafficking and drug smuggling to get their drugs across the United States." TR Vol. 1, at 114. Officer Hess testified that this testimony was based on his training and experience, and he testified specifically concerning his experiences in patrolling the

stop,[4] and (3) regarding the use of older people as drug couriers.[5]

Petitioner raised these evidentiary issues in his direct appeal, and the OCCA rejected each issue in turn. With respect to the first and third issues, the OCCA found that "[t]he testimony about the use of I-40 to traffic illegal drugs across the country and the use of older people as drug couriers was relevant and not more prejudicial than probative." Response, Ex. 3, at 3.

With respect to the issue concerning the admission of testimony about indicators of deception in body language and observations of such indicators during Petitioner's traffic stop, the OCCA declined to address the merits of the claim. Instead, the appellate court found that "the admission of this testimony, if error, was harmless in light of the strong evidence [of guilt] presented in this case." Id.

The OCCA relied entirely on state law in addressing and rejecting each of these claims of evidentiary errors. When "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825 (1991)(citing Darden v. Wainwright, 477 U.S. 168, 179–183 (1986)). See Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002)(holding state court evidentiary rulings do not warrant habeas relief "unless they

---

eastbound lanes of Interstate 40. Id. at 117-120.

[4]Officer Hess testified that when he asked Petitioner about his purported trip to Little Rock, Arkansas, Petitioner "actually covered his mouth and was almost looking away when he was giving me [an] answer." TR Vol. 1, at 130. The officer testified that based on his training such body language could indicate deception or anxiety. Id. at 130-131.

[5]OBN Officer Forney testified that from his training and experience he knew that drug smuggling operations often use older individuals, like Petitioner, who are retired and on a fixed income to traffic illegal substances across the United States. TR Vol. II, at 132.

rendered the trial so fundamentally unfair that a denial of constitutional rights results").

The OCCA's rejection of Petitioner's claims of error in the admission of evidence is neither contrary to, nor an unreasonable application of, the principle stated in Payne. The OCCA reasonably concluded that the evidence concerning Interstate 40 and elderly drug couriers was relevant to Petitioner's trial on drug trafficking charges. The admission of this evidence was not so unduly prejudicial that it rendered Petitioner's trial fundamentally unfair.

With respect to the testimony by Officer Hess that Petitioner's body language during the traffic stop could indicate deception, there was, as the OCCA found, substantial evidence of Petitioner's guilt presented during his trial. The admission of this evidence was not so unduly prejudicial that it rendered Petitioner's trial fundamentally unfair. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

V. Discovery Violation - Ground Four

In Petitioner's fourth ground for relief, Petitioner contends that the trial court erred by not granting his motion for a mistrial due to a "discovery violation [that] constituted unfair surprise and deprived Mr. Sanchez of a fair trial." Brief in Support of Petition, at 25.

During Petitioner's trial, Petitioner's defense counsel asked Officer Hess whether, to his knowledge, Petitioner had "ever been arrested for trafficking or drug possession or anything," and the officer responded, "I believe he does have a criminal record that . . . I was alerted to. I don't know what the outcome of that record was or what the outcome of that arrest was." TR Vol. II, at 30. At that point, Petitioner's defense counsel requested a mistrial because he had not been provided any information in discovery concerning an arrest. The prosecutor responded that

he had provided defense counsel with the contents of the prosecution's file.  The trial court instructed the prosecutor to review his file and provide any information to defense counsel concerning an arrest.

The trial court overruled the motion for mistrial based on the fact that defense counsel "opened the door on this question." Id. at 36.  Defense counsel continued questioning Officer Hess concerning a possible prior arrest of Petitioner, and Officer Hess testified that he had been notified by a police dispatcher during the traffic stop that "there was a criminal history for this individual." Id. at 37.  Officer Hess testified that Petitioner did not have any convictions in his record and the officer had no further information concerning an arrest history. Defense counsel stated that "Carlos Sanchez is a fairly common name" and ascertained that Officer Hess had not investigated the accuracy of the criminal history report.  Defense counsel also elicited testimony from the officer that Petitioner had no previous convictions "relating to drugs" in his record. Id. at 38.

Later during the trial but outside of the hearing of the jury, the presiding judge stated in open court that he had reviewed the Oklahoma statute governing pretrial disclosures under Oklahoma's discovery code.  The judge stated that under this statute the "State is obligated to produce a record of any prior criminal convictions of a defendant" and based on this statute the judge ruled that "the State hasn't violated the discovery code." Id. at 101-102.  The court overruled the motion for mistrial. Id. at 102.

Petitioner contends that the prosecution's failure to provide any information concerning the alleged existence of a previous arrest denied him a meaningful opportunity to present a

complete defense. Petitioner presented this same argument in his direct appeal. Citing Okla. Stat. tit. 22, § 2002 and <u>Jackson v. State</u>, 146 P.3d 1149, 1156 (Okla. Crim. App. 2006), the OCCA concluded that "[t]he district court did not abuse its discretion in denying Sanchez's motion for mistrial because there was no discovery violation." Response, Ex. 3, at 4.

With this claim, Petitioner has raised only an issue involving state evidence law, and "[a] habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law." <u>Bullock v. Carver</u>, 297 F.3d 1036, 1055 (10th Cir. 2002)(citing <u>Estelle v. McQuire</u>, 502 U.S. 62, 67 (1991)). "Under Tenth Circuit precedent, [Petitioner] may only obtain habeas relief for an improper state evidentiary ruling if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." <u>Id.</u> (internal quotation marks and brackets omitted).

Petitioner's defense counsel posed the question that elicited Officer Hess's testimony about a prior arrest, and defense counsel continued to question Officer Hess about the possibility that Petitioner had a criminal history, eliciting testimony that Officer Hess was unsure of the nature of the arrest and that an arrest does not always lead to a conviction. Defense counsel also elicited testimony from Officer Hess that Petitioner had no prior criminal convictions. Under these circumstances, Petitioner's trial was not rendered fundamentally unfair due to the alleged discovery violation, and the OCCA's decision was not contrary to or an unreasonable application of clearly established Supreme Court jurisprudence.

VI. <u>Prosecutorial Misconduct - Ground Five</u>

Petitioner contends in ground five of the Petition that prosecutorial misconduct denied

him a fair trial.  Petitioner contends that during closing arguments the prosecutor shifted the burden of proof to Petitioner to demonstrate his innocence, in violation of the principle established in <u>Mullaney v. Wilbur</u>, 421 U.S. 684 (1975).  Petitioner also contends that the prosecutor committed misconduct when he inserted his own personal opinion by estimating the value of methamphetamine, when he stated "facts not in evidence" or not at issue "regarding drug forfeiture [related] to rental cars versus personal cars," and when the prosecutor stated "if he was trafficking drugs, he would take I-40 instead of I-10." Brief in Support, at 32.

Petitioner raised these same claims of misconduct in his direct appeal. In his appellate brief, Petitioner referred to the following portions of the prosecutor's closing argument:

> There were several assertions that have been made to you that have been backed up by absolutely no testimony and no exhibits.
> Such as, first of all, that there was any legitimate business that the defendant had in Arkansas.  Who took the stand and said that?  His son couldn't tell it.  His brother couldn't tell it.  The most they could tell you is, yeah, he's a handy guy.

(TR Vol. III, at 15-16).

> Let's talk about the story.  You were told you were going to hear evidence that the defendant was hired to do work in Arkansas, that the defendant was going to go do some stuccowork [sic], and the defendant takes his tools everywhere.  Who took the stand and offered any evidence of any of those things?
> * * *
> But as far as any job in Arkansas, anything about stuccowork [sic] or construction, not one witness, not one exhibit, offered you any evidence that that's true.  No one testified he was hired to work in Arkansas.  Even though the defendant has the phone number of the man he was supposed to meet, that person could have been here, could have been subpoenaed to say, "Yes.  I hired Carlos Sanchez.  This is what I was going to pay him.  This is what he was going to do with me.  This is when he was going to be here.  This is when he was going to leave."  I didn't see that person.

(TR Vol. III, at 23-24).

> In criminal law we sometimes throw around this expression kind of as a joke. It's called the SODDI defense. It's [sic] stands for "some other dude did it." And that's about how much detail you've been given as a defense theory. The defense suggested that others could have planted those drugs in the car. It could have been this Fortino guy in California. . . . Why couldn't Fortino be here? He could have been subpoenaed to come right there, get up on the stand - - by the way, it's not an invitation. It's a court command: You will come and present testimony. Fortino could have been there. Defense counsel could have asked him, "You planted drugs in that car, didn't you? You borrowed that car from my client for 45 minutes, took it and planted drugs, didn't you?" And you would have been able to gauge his reaction live to that question. You weren't given that opportunity. In fact, you weren't even given an opportunity to think about why Fortino isn't here. He's just somewhere out there, planting drugs on people.

(TR Vol. III, at 26-27).

> The only ones who could say for sure where those drugs are going to end up in Arkansas are the defendant and his contact. . . . And maybe the defense will suggest to you what that wild coincidence is. They certainly haven't presented evidence of it, but they might suggest to you what it might be. They might suggest why that can be explained away. And he might suggest to you why this cross-country trip for one day could be explained away. And maybe they'll suggest to you why he had little clothing and the fact what he had he purchased three days after he left can be explained away. Maybe he'll suggest to you that the fact that says he's going to see a friend and it's business - - we can explain that.

(TR Vol. III, at 30).

> Maybe they can explain to you why he doesn't know where he's going in Arkansas. . . . What I don't think they can explain to you is why all of these things are present with the same defendant in the same car and the same drugs.

(TR Vol. III, at 31).

14

No one, least of all me, is saying that Carlos Sanchez is obligated to prove his innocence. That's not the law. That is not what I have indicated. What I am saying is that the defense has the same opportunity to present evidence to you as the State does. They had names and phone numbers of people that could have come here to substantiate the defendant's story, and those people are nowhere to be found. There's no explanation as [to] why they're not here; they're just not here.

(TR Vol. III, at 61-62).

Now, [defense counsel] tells you that they had names and phone numbers. They could have investigated. Those same names and phone numbers could have got those witnesses here, and they could tell you exactly what they had to do or not do with Carlos Sanchez.

(TR Vol. III, at 64).

Now, I have - - I have never in my life heard so many things about what an innocent person would do in a given situation. In fact, I think that's all I've heard. Well, an innocent person wouldn't say that and an innocent person wouldn't do this. Who is the innocent person that came to testify to tell you what they would have done? Everything that has been brought to you concerning what an innocent person would or wouldn't do has been naked speculation. Nothing more. Nothing less. There's been no innocent person to take that stand and say, "Well, in that situation, here's what I would do. I would say, 'Yes, Officer, I've got a gun' the first time."

(TR Vol. III, at 65-66).

Petitioner also argues that the prosecutor committed misconduct when he inserted his own personal opinion in the case, argued facts not in evidence, and argued facts not at issue. In his direct appeal, Petitioner referred to specific portions of the prosecutor's closing argument in support of this claim:

450 grams to a pound. That's $45,000 a pound. If only two of those are methamphetamine, that's almost $100,000. If all ten of them are methamphetamine, it's closer to half a million. Now, you

know which I think of those is the truth.

(TR Vol. III, at 28).

> [W]hy I-40 is preferable to I-10?  I-10 has more checkpoints.  That means dogs.  That means guards.  That means possible car searches.  If I were trafficking drugs, I wouldn't take I-10.

(TR Vol. III, at 31).

> Agent Hess told you a lot of times drugs are moved in rental cars.  If you get caught in your own car moving drugs, that car is forfeited.  You lose it.  There's no forfeiture with a rental car.  It just costs you a couple hundred bucks.

(TR Vol. III, at 33).

The Supreme Court has observed that "[w]hen specific guarantees of the Bill of Rights are involved" in a prosecutorial misconduct allegation, "this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  "Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." Torres v. Mullin, 317 F.3d 1145, 1158 (10th Cir. 2003).

Where the petitioner does not allege that the prosecutor's alleged misconduct directly affected a specific constitutional right, habeas relief is available when the "prosecutor's remark[s] . . . so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643.  This inquiry requires an examination of "the entire proceedings" in the case and the strength of the evidence against the petitioner. Donnelly, 416

U.S. at 643. "Any cautionary steps - such as instructions to the jury- offered by the court to counteract improper remarks may also be considered. Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment." <u>Le v. Mullin</u>, 311 F.3d 1002, 1013 (10th Cir. 2002)(citations omitted).

Because Petitioner did not object to any of the alleged instances of misconduct, the OCCA reviewed Petitioner's claims of prosecutorial misconduct under the court's plain error standard of review. The OCCA concluded that there was no plain error and found that "[w]hen the challenged remarks are read in context, the record shows that the prosecutor argued the evidence and inferences from the State's point of view and that the argument fell within the wide latitude approved by this Court." Response, Ex. 3, at 4 (citing <u>Coddington v. State</u>, 254 P.3d 684, 712 (Okla. Crim. App. 2011), and <u>Mack v. State</u>, 188 P.3d 1284, 1289 (Okla. Crim. App. 2008)).

The OCCA did not rely on or cite federal precedential authority in rejecting Petitioner's claims of prosecutorial misconduct. Nevertheless, the deferential standard of review under 28 U.S.C. § 2254(d) applies because the OCCA adjudicated Petitioner's prosecutorial misconduct claims on their merits.

Petitioner has presented two separate claims of prosecutorial misconduct. His first claim involves the constitutionally-protected right to remain silent. As to this claim, the Court "must evaluate the prejudicial effect that the objectionable comments had on the presumption of innocence by considering the pertinent surrounding circumstances at trial." <u>Mahorney v. Wallman</u>, 917 F.2d 469, 473 (10th Cir. 1990).

During closing arguments, a prosecutor may properly "comment on the circumstances of

the crime made known to the jury during trial" and a prosecutor also "possesses reasonable latitude in drawing inferences from the record." Hooper v. Mullin, 314 F.3d 1162, 1172 (10th Cir. 2002). However, "[w]here a prosecutor's remarks concern matters that could have been explained only by the accused, . . . they give rise to an innuendo that the matters were not explained because petitioner did not testify and, thus, amount to indirect comment on the defendant's failure to testify." Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006)(quotations and brackets omitted). "Simply put, the question is whether the language used by the prosecutor was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." Id. (quotations and brackets omitted).

Viewed in isolation, at least some of the prosecutor's comments cited by Petitioner in his direct appeal could be interpreted as indirect comments on Petitioner's failure to testify. However, the prosecutor's closing argument must be read in the context of the entire trial. During opening arguments, Petitioner's defense counsel told the jury that Petitioner would testify and deny that the illegal drugs found in the rental car were his. TR Vol. I, at 104. During the trial, the defense called only two witnesses who were both relatives of Petitioner. His son testified that Petitioner had worked as a cook until he retired and that he kept busy doing odd jobs for people, like moving furniture, and he often traveled and took his tools to these jobs. Petitioner's brother testified that sometime in November or December of 2012 Petitioner drove from his hometown of Tucson, Arizona, to California to visit their brother who was sick and hospitalized. Petitioner's brother did not know the exact dates of this visit or where Petitioner

was going after he left California.  In the opening statement, Petitioner's defense counsel stated that the evidence would show Petitioner met a man named Fortino who offered him a job constructing "stucco mobile homes" in Little Rock, Arkansas, and provided Petitioner with "names and phone numbers of somebody for him to contact once he gets there." TR Vol. I, at 95-96.

A pertinent decision is the case of United States v. Lockett, 438 U.S. 586 (1978), in which the Supreme Court determined that where defense counsel had outlined the purported defense theory during opening arguments and had indicated to the jury that the defendant would testify, the prosecutor's comments that the state's evidence was "uncontradicted" and "unrefuted" did not constitute prosecutorial misconduct.  In the Court's opinion, those comments "added nothing to the impression that had already been created by [the defendant's] refusal to testify after the jury had been promised a defense by her lawyer and [had been] told that [the defendant] would take the stand." Id. at 595.  See United States v. Simpson, 7 F.3d 186, 190 (10th Cir. 1993)(collecting cases using the rationale of Lockett to uphold prosecutorial comment on the lack of evidence supporting a defendant's theory of the case when the defendant does not testify).

In this case, "[c]onsidering the challenged statements in context, . . . the prosecutor merely argued that the evidence did not support [Petitioner's] defense theory." Morris v. Workman, 382 Fed. App'x. 693, 969 (10th Cir. 2010)(unpublished op.).  Petitioner has not demonstrated that the OCCA's rejection of this claim of prosecutorial misconduct was contrary to or unreasonably applied the controlling Supreme Court standard.

19

In his second claim of misconduct, Petitioner contends that the prosecutor presented his personal opinion and argued facts not in evidence. No objection to any of these comments was lodged by the defense. A prosecutor has a "duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence." United States v. Young, 470 U.S. 1, 7 (1985). In this case, the prosecutor's comments that are allegedly "personal opinion" were fair comments based on the testimony of the OBN officers concerning the value of methamphetamine and the usual routes for drug smuggling operations in the United States. See Patton v. Mullin, 425 F.3d 788, 813 (10th Cir. 2005)(a prosecutor may "fairly comment on the evidence" unless the remarks constitute improper vouching for the credibility of a witness). Moreover, the trial court, defense counsel, and the prosecutor advised the jury that the attorneys' arguments were not evidence. Petitioner has not demonstrated that the OCCA's decision was contrary to, or an unreasonable application of, governing Supreme Court authority. Consequently, Petitioner is not entitled to habeas relief concerning his claims of prosecutorial misconduct.

VII. Sufficiency of the Evidence - Grounds Six and Seven

In ground six, Petitioner asserts that the prosecution did not present sufficient evidence to support his drug trafficking conviction because there was no evidence that he possessed the drugs found in his rental car. In ground seven, Petitioner contends that the prosecution presented insufficient evidence to support his conviction for possession of a firearm while in the commission of a felony.

For habeas review, the Supreme Court has clearly established that "the relevant question

is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson).

The offense of aggravated trafficking in illegal drugs is violated by the knowing possession of 450 grams or more of methamphetamine. Okla. Stat. tit. 63, § 2-415(4)(c). The offense of possession of a firearm while committing a felony is violated by the knowing, willful possession of a pistol while committing a felony. Okla. Stat. tit. 21, § 1287.

Petitioner asserted the same insufficient evidence claims in his direct appeal. With respect to the aggravated drug trafficking conviction, the OCCA found that this claim was

> without merit. He was the sole occupant of the rental car and admitted the tools inside it belonged to him. It was obvious to the investigating agents that something was secreted inside the rear door panel. Sanchez's nut driver tool had the exact bit on it required to remove the door panel. This circumstantial evidence provided strong proof connecting Sanchez to the drugs inside the door. . . . Taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Sanchez had constructive possession of the drugs and was guilty of aggravated trafficking.

Response, Ex. 3, at 4-5. With respect to the firearm conviction, the OCCA rejected this claim as well, finding that the district court had instructed the jury

> on the factors to consider in determining whether there was a nexus between the aggravated drug trafficking and possession of the gun. . . . The gun was within Sanchez's reach as he transported at least two pounds of methamphetamine cross country. The gun's location permitted quick and easy access in case of emergency to protect the valuable cargo. Any rational trier of fact could find beyond a reasonable doubt that Sanchez committed the crime of Possessing

a Firearm While Committing a Felony.

Id. at 5.

"An individual constructively possesses property when he knowingly holds the power and ability to exercise dominion and control over the property." United States v. Ruiz-Castro, 92 F.3d 1519, 1531 (10th Cir. 1996)(quotation marks and brackets omitted). "In order to establish constructive possession, the government must establish that there was a sufficient nexus between the accused and the drug." Id.

Petitioner's conjecture that someone else could have put the illegal drugs in his rental car is not evidence. The OCCA's factual findings are presumed correct, and Petitioner has not overcome the presumption of correctness with clear and convincing evidence. 28 U.S.C. §2254(e)(1). These factual findings, and the evidence presented at his trial, are more than sufficient to demonstrate the requisite nexus between Petitioner and the illegal drugs seized from his rented vehicle. Likewise, the OCCA's factual findings, and the evidence presented at his trial, are more than sufficient to demonstrate the requisite nexus between Petitioner's drug trafficking offense and his possession of a firearm. Petitioner has not demonstrated that the OCCA's decision was contrary to or unreasonably applied the controlling Jackson standard, and Petitioner is not entitled to habeas relief concerning these claims.

## VIII. Excessive Sentence

Petitioner asserts in his Petition that his sentence for the aggravated drug trafficking conviction was excessive. The OCCA found that Petitioner's sentence was within the range of punishment provided by Oklahoma law and did not "shock the conscience of the Court."

Response, Ex. 3, at 6.

"A gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). "[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003). In considering the proportionality of a sentence, a state trial court's sentencing decision is accorded "wide discretion," and "challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000).

Petitioner's thirty-year sentence for his drug trafficking conviction was well within the range of punishment for the offense. Okla. Stat. tit. 63, § 2-415(D)(1)(punishment for trafficking in illegal drugs is "[n]ot less than twice the term of imprisonment provided for in Section 2-401 of this title"). Petitioner has not demonstrated that the OCCA's rejection of his excessive sentence claim was contrary to or unreasonably applied governing Supreme Court precedent.

IX. Cumulative Errors

Petitioner's ninth and final claim is that cumulative errors occurring during his trial deprived him of due process. The OCCA rejected this claim, finding that there were no errors meriting relief in the case.

The Tenth Circuit Court of Appeals has addressed the issue of cumulative errors and explained that "[i]n the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,'

an analysis ... undertake[n] only if there are at least two errors." <u>Fairchild v. Trammell</u>, __ F.3d __, 2015 WL 1843529, *20 (10th Cir. 2015)(quoting <u>Lott v. Trammell</u>, 705 F.3d 1167, 1223 (10th Cir. 2013)). <u>See</u> <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998)(cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

In this case, no errors of a constitutional magnitude have been found, and hence cumulative error analysis is not warranted. Petitioner has not demonstrated that the OCCA's rejection of his cumulative errors claim was contrary to or an unreasonable application of clearly-established Supreme Court authority. Petitioner is therefore not entitled to habeas relief.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by November 30th, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ___9th___ day of ____November____, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE